UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BENJAMIN FARKAS, JULIE FARKAS, and
SILPAN PATEL,

                Plaintiffs,

  - v. -

MATERIALS LIFECYCLE MANAGEMENT
COMPANY f/k/a/ INTERNATIONAL PAPER
PRODUCTS CORPORATION, MARK A.
DUPUIS, STEPHEN P. WOICIK, JOHN B.
ROCHE, WILLIAM L. PHILLIPS, DANIEL
A. COLUSSY, and HIGH HAMMOCK, LLC
f/k/a/ BOHICKET MLMC, LLC.

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Civil Action No. 16-7357**

**COMPLAINT AND**
**JURY DEMAND**

       Plaintiffs Benjamin Farkas, Julie Farkas and Silpan Patel, by and through their undersigned counsel, state and allege as follows:

## NATURE OF ACTION

       1.     This is a federal securities fraud action brought by original investors in Materials Lifecycle Management Company f/k/a International Paper Products Corporation ("MLMC") seeking damages with interest, treble damages with interest, the issuance of an Order rescinding the purchase of Plaintiffs' shares, attorney's fees, costs and expenses, and any other and further relief as warranted and just.

       2.     Plaintiffs allege that Defendants knowingly made false and misleading statements of material fact, and omitted to disclose material facts, in order to induce Plaintiffs to purchase securities, and to prevent them from attempting to later sell those securities; breached their fiduciary duty owed to Plaintiffs by actively misrepresenting and fraudulently failing to disclose material facts, and engaging in self-interested transactions; and unlawfully and in bad faith retained financial benefit from Plaintiffs.

       3.     In addition, Defendants sold unregistered securities to Plaintiffs and, upon information and belief, other similarly unaccredited investors who lacked the sophistication to evaluate the risk of their investment. Defendants' unregistered offering falls under no exemption under the Securities Act of 1933 ("Securities Act").

       4.     Upon information and belief, Defendants fraudulently raised millions of dollars for MLMC from Plaintiffs and other unaccredited investors through this unregistered offering. In

their scheme, Defendants touted the potential returns of their investment, asserting that Plaintiffs would achieve returns of up to multiple times of their investments, and representing MLMC to be a flourishing company with tremendous growth potential.  Defendants, however, fraudulently concealed the true nature of MLMC's operation: a company on the constant verge of collapse and financial ruin.  Defendants' misrepresentations, omissions, and high-pressure tactics induced Plaintiffs to invest hundreds of thousands of dollars.

5.     Defendants' continued their misrepresentations and omissions even after Plaintiffs invested in MLMC in an effort to hide and conceal the fraud, self-dealing, and misrepresentations; and prevent Plaintiffs from seeking return of their investments.

6.     For months, Plaintiffs attempted to learn the status of their investment and to receive updates concerning MLMC.  Defendants failed to provide Plaintiffs with any substantive information concerning the status of the company.

7.     Indeed, despite MLMC's purported "market disrupting" technology, allegedly unparalleled patented technology, and the claimed success of its purportedly then-existing and operating plants, MLMC generated no revenue.  Yet upon information and belief, the Defendants agreed to pay Defendants Dupuis and Woicik significant compensation each for several years, despite MLMC not being a viable commercial operation.  The Defendants therefore facilitated and allowed Dupuis and Woicik to profit off of their fraud.

8.     After fraudulently inducing Plaintiffs and other investors to invest, MLMC repeatedly resorted to unfavorable loan deals with Bohicket MLMC, LLC ("Bohicket"), in order to raise capital.

9.     Upon information and belief, Bohicket is owned and controlled by Defendant Roche, who was simultaneously serving as a member of the MLMC Board and eventually, a member of MLMC's executive team, including as President and Chief Executive Officer.

10.     Roche eventually seized control of the Board of Directors, ousted MLMC founder and former president/CEO Dupuis, and upon information and belief, is currently the President of MLMC.   During his tenure on the Board of Directors and then also as President and CEO of MLMC, Roche executed several loan deals that were unfavorable to MLMC but were beneficial to him and others as the owner of Bohicket.

11.     In April 2016, after months without communicating with Plaintiffs and other investors regarding the state of the company, MLMC informed their investors that because MLMC was in default from its various self-dealt Bohicket loans, and in order to avoid the cost of bankruptcy proceedings, Plaintiffs and other shareholders could vote to forfeit their existing interest in MLMC as well as their right to sue the company in exchange for the right to purchase stocks in a newly formed company owned by John Roche and other Bohicket investors.  Shareholders who voted against this plan were threatened that they would receive nothing for the shares they own in MLMC.

12.     MLMC's scheme to defraud investors was enabled and facilitated by the acts and omissions of the individual defendants named herein.  Without their involvement, substantial

assistance, and disregard of their responsibilities, the MLMC scheme could not have been successful, and Plaintiffs would not have suffered their loss.

## JURISDICTION AND VENUE

13.     The federal claims asserted herein arise under and pursuant to Section 12 of the Securities Act, Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission [17 C.F.R. § 240.10b-5].

14.     This Court has jurisdiction of this action pursuant to § 22(a) of the Securities Act [15 U.S.C. § 77v] and 28 U.S.C. § 1331.

15.     Venue is proper pursuant to § 22(a) of the Securities Exchange Act and 28 U.S.C. § 1391(b) and (c).  Upon information and belief, acts and transactions giving rise to this action occurred in this District.  Additionally, several of the named Defendants reside herein and regularly transact business within this district.

16.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate telephone communications.

## PARTIES

17.     Plaintiffs Benjamin Farkas and Julie Farkas are citizens and residents of the State of New Mexico.  In 2013, Benjamin and Julie Farkas purchased 1,334 shares of MLMC, as set forth in the certification attached hereto and incorporated by reference herein, and were damaged thereby.

18.     Plaintiff Silpan Patel is a citizen and resident of the State of New Mexico.  In 2013, he purchased 1,334 shares of MLMC, as set forth in the certification attached hereto and incorporated by reference herein, and was damaged thereby.

19.     Defendant MLMC is a Massachusetts corporation that maintains its principal executive offices in Bridgeton, Missouri.

20.     Defendant Mark A. Dupuis ("Dupuis") was the founder and former President of MLMC.  Upon information and belief, he is a citizen and resident of Massachusetts.

21.     Defendant Stephen P. Woicik ("Woicik") is currently, and was at all relevant times, the Chief Financial Officer ("CFO") of MLMC.  Woicik also served on MLMC's Board of Directors.  Upon information and belief, he is a citizen and resident of Connecticut.

22.     Upon information and belief, Defendant John B. Roche ("Roche") is currently the President and CEO of MLMC.  Roche was formerly the Director of MLMC, as well as a member of MLMC's board.  Roche also maintains ownership and control of Bohicket MLMC, LLC.  Upon information and belief, Roche is a citizen and resident of New York.

23.     William L. Phillips ("Phillips") is an MLMC Board Member and major investor. Upon information and belief, Phillips is a close associate of Roche, and is an investor in Bohicket MLMC, LLC.  Upon information and belief, Phillips is a citizen and resident of Massachusetts.

24.     Daniel A. Colussy ("Colussy") became a member of MLMC's Board of Directors in December 2014.  Upon information and belief, Colussy is a close associate of Roche, and is an investor in Bohicket MLMC, LLC.  Upon information and belief, Colussy is a citizen and resident of Florida.

25.     Bohicket MLMC, LLC ("Bohicket")  is a Limited Liability Company registered in New York in April 2013, which provided eight loans to MLMC from 2013 to 2016.  Upon information and belief, Defendant Roche maintained full ownership and control of Bohicket at all times relevant to this action.  Upon information and belief, Bohicket is now operating as High Hammock, LLC.

## RELEVANT NON-PARTIES

26.     Brett A. Shisler ("Shisler") was formerly an MLMC Advisor charged with identifying and targeting investors for MLMC, at all times acting at the direction and under the control of MLMC and Defendant Dupuis.

27.     Thomas Caravella ("Caravella") became MLMC Chief Executive Officer ("CEO") after Dupuis' resignation in March 2015.

28.     James LaDue ("LaDue") is currently MLMC Chief Operating Officer ("COO"). LaDue was part of the original MLMC management team.

29.     John J. Murphy ("Murphy") is currently MLMC Director of Materials Acquisition. Murphy was part of the original MLMC management team.

30.     Upon information and belief, Materials Lifecycle Management Company of St. Louis, LLC, Materials Lifecycle Management Company (Delaware), LLC, Materials Lifecycle Management Company of Tampa, LLC, Materials Lifecycle Management Equipment, LLC f/k/a IPP Equipment Corporation, LLC, Materials Lifecycle Management Logistics, LLC, Materials Lifecycle Management Company of Birmingham, LLC, IPP Westfield, LLC, and IPP Trucking Corporation, LLC (collectively, the "MLMC subsidiaries") are sub-entities of Defendant MLMC. Upon information and belief, the MLMC subsidiaries were also borrowers on one or more loans issued to MLMC by Bohicket.

## STATEMENT OF FACTS

### A.  Defendants Induce Plaintiffs to Invest in MLMC

31.     In December 2012, Shisler contacted Plaintiff Benjamin Farkas to induce him to invest in MLMC.  Shisler forwarded a "teaser" document to Farkas by email, which provided details about the company and listed Shisler as an MLMC "Advisor."

32.     The teaser, prepared by Dupuis, claimed that MLMC was a rapidly expanding materials management company, with patented and proprietary alternative fuels technology.  The document further claimed that MLMC possessed the technology to convert non-recyclable materials into a fossil fuel replacement energy source.

33.     The teaser document provided in part that:

> MLMC is positioned to scale operations nationally and has received a plethora of incoming customer calls for fuel requests.  The Company has secured several, five year fuel supply agreements with off-takers including the largest lime manufacturing company in the world, a large-cap cement company and a state-owned power company.

34.     Upon information and belief, MLMC had not secured any five-year fuel supply agreements at the time the teaser document was sent to Plaintiffs.  Defendant Dupuis knew that this statement was false, and intended for prospective investors to rely upon it.

35.     The teaser document further stated that MLMC had an established, operational plant in Massachusetts that could be and was being duplicated elsewhere; and governmental regulatory approvals at the federal and state levels.  Defendant Dupuis knew that each of these representations were false at the time the teaser document was sent to Plaintiffs.

36.     During various group phone calls in January 2013, as well as in emails involving Dupuis, Woicik and Shisler (acting at the direction of Dupuis and Woicik), Defendants Dupuis and Woicik induced Plaintiff Farkas to invest in MLMC.  Dupuis and Woicik told Farkas that he was being offered a special opportunity that would disappear once the company obtained additional funding within the next few months.  During the course of these communications, Dupuis, Woicik and Shisler, acting as MLMC representatives, made the following representations, each of which was false:

a.     MLMC's current market valuation was $20-$30 million, with existing assets themselves worth at least $10 million;

b.     Shisler had himself made an investment of $200,000 in MLMC;

c.     Shisler was slated to become the Chief Financial Officer of MLMC;

d.     MLMC had already secured $4 million of additional funding;

e.     MLMC had "over 75 investors, so shares [are] getting traded basically on a monthly basis as people pass away, need the cash, want to invest, etc.";

f.     If Farkas were to invest in MLMC, he would have a "2x guaranteed return" and could "resell [his] shares in two months at a [$20 million] valuation—immediately making 2x your money";

g.     An initial investment of $100,000 "could easily grow to $500,000" over 3 years, although Shisler's "models project much more than that";

h.     "A single plant, which is what the larger investment round will fund costs $3 million to build and generates $8mm a year in free cash flow";

i.     MLMC's technology was "disruptive" in the industry, meaning that "a waste management player will come in and buy us as soon as we start taking away their waste streams"; and

j.     MLMC shares could be sold, as one manager had already sold 7,000 shares, although MLMC had right of first refusal.

37.     During one January 2013 group phone call involving Dupuis, Woicik, and Plaintiff Ben Farkas, Farkas specifically told Dupuis and Woicik that neither he nor his wife Julie were "accredited investors," and asked whether their unaccredited status would preclude them from investing.  Dupuis and Woicik assured Farkas that there was a "loophole" that allowed for investments from unaccredited "friends and family."

38.     On January 23, 2013, Farkas once again disclosed his unaccredited status in an email to Woicik, Shisler and Dupuis:

I am not currently an accredited investor and noticed some verbiage in the documents about that.  I checked with Brett [Shisler] and he indicated that I did not need to be accredited since I would be classified as "Friends and Family" in this purchase.

39.     Woicik replied to Farkas' email, stating that MLMC investors "typically" are accredited, but "in some cases, you are right, they fall under a friends and family class of investor."

40.     In full reliance on the representations made by Dupuis, Woicik, and Shisler, as well as the representations contained in the teaser document, Benjamin Farkas and his wife, Plaintiff Julie Farkas invested in MLMC.

41.     The Farkas' reliance on the representations made by the Defendants was reasonable under these circumstances, given the high-pressure tactics used by Dupuis and Woicik to induce their investment in MLMC, and the lack of formal documentation shared with Plaintiffs regarding MLMC's financial status and future prospects, and the Farkas' status as unaccredited investors.

42.     At the end of January 2013, Defendants sent Plaintiffs Farkas and Farkas an Investor Agreement, Subscription Agreement and Investor Questionnaire.  The documents contained clauses stating that the signatories were "accredited investors."

43.      The Investor Questionnaire also contained questions regarding Plaintiffs Ben and Julie Farkas and their income and net worth.  Plaintiffs Farkas and Farkas' answers to those questions conclusively demonstrated that Farkas and Farkas were not accredited investors.

44.     On January 28, 2013, Plaintiffs Farkas and Farkas signed the Investor Agreement, Subscription Agreement and Investor Questionnaire.  On the same day, Farkas and Farkas purchased 1,334 shares of Common B Non-voting MLMC stock for $100,050 via wire transfer, which was also executed on January 28, 2013.

45.     As of January 2013, Plaintiffs Farkas and Farkas' individual incomes had not exceeded $200,000 in the previous two full calendar years, nor did they reasonably expect their individual incomes to exceed $200,000 in 2013.  Plaintiffs Farkas and Farkas' joint income had not exceeded $300,000 for the previous two full calendar years, nor did they reasonably expect their joint income to exceed $300,000 in 2013.  In addition, Plaintiffs Farkas and Farkas' joint net worth did not exceed $1,000,000.

46.     In April 2013, Shisler sent an email introducing Patel as a potential investor of MLMC to Dupuis and Woicik.

47.     Prior to investing in MLMC, Patel spoke to Dupuis and Shisler on the phone on or about April 15, 2013.   During the phone call, Dupuis and Shisler made the following representations, each of which was false:

   a.     MLMC had a market valuation of $20 million;

   b.     MLMC would imminently be closing on a deal to obtain an additional $3 million of funding, after which Patel would be unable to purchase shares at a $10 million valuation;

   c.     MLMC simply needed to move its plant from Massachusetts to Missouri, but otherwise had all of the technology, patents, and regulatory requirements in place for immediate finance success;

   d.     MLMC was positioned to immediately scale nationally; and

   e.     MLMC was producing a "disruptive" technology, and the company's "end goal" was to be acquired.

48.     Shisler told Patel that he was confident that sales of MLMC's equipment alone would net $20 million, such that Patel would receive double his investment back even if something were to happen to the company.

49.     After reviewing the Investor Agreement, Subscription Agreement and Investor Questionnaire sent by Defendants, Patel asked in an April 15, 2013 email to Woicik whether an "amendment" to the clause of the Investor Agreement stating that the investor was accredited would be possible.

50.     As of January 2013, Patel's individual income had not exceeded $200,000 in the previous two full calendar years, nor did he reasonably expect his individual income to exceed $200,000 in 2013.  In addition, Patel's net worth did not exceed $1,000,000.

51.     Woicik, now fully aware of Patel's unaccredited status, proceeded to ask Patel "how far off are you from being a qualified investor?"  Patel replied: "I haven't done anything to become an accredited investor," and again asked if an "amendment" would be possible to account for his unaccredited status.

52.     Defendants Dupuis and Woicik did not take any other steps to address Patel's unaccredited status, and instead continued to pressure Patel to immediately invest in MLMC.

53.     On April 17, 2013, within days of Patel's first contact with Dupuis, Woicik and Shisler, and in response to Patel's request for a few additional days to wire his funds, Woicik sent an email to Patel in order to induce him to invest immediately:

> In terms of the wire it would be preferable for you to make the wire today instead of waiting until you return [next week] because our intent is to only sell shares up to the point where the rest of our funding is closed.  The closing of our major funding it scheduled to be complete (sic) by the end of this week.  There's a possibility that it might go beyond Friday and into next week but the opportunity to purchase shares might be in jeopardy.

54.     In full reliance on the representations made by Shisler, and Defendants Dupuis and Woicik, including Woicik's representation regarding the urgency of executing Patel's potential investment as soon as possible, as well as the representations contained in the teaser and PowerPoint presentation documents, Plaintiff Patel invested in MLMC.

55.     On April 17, 2013, Plaintiff Patel signed the Investor Agreement, Subscription Agreement and Investor Questionnaire.  On the same day, Patel purchased 1,334 shares of Common B Non-voting MLMC stock for $100,050 via wire transfer, which was also executed on April 17, 2013.

56.     Patel wrote "exception" next to section 4.7 ("Accredited Investor") on his signed and executed Investor Agreement in order to indicate that he was not an accredited investor, and an that exception to this provision therefore applied.

57.     Defendants did not reject this modification of the agreement.  Instead, they accepted Patel's investment.

58.     Upon information and belief, prior to making their investments, Defendants did not provide Plaintiffs with the Financial Statement Information required under 17 C.F.R. 230.502 to qualify for an exemption from registration, including financial statements and balance sheets.

59.     Defendants never provided Plaintiffs with any private placement memoranda or any risk disclosures in connection with their investment. The MLMC offering was not registered with the SEC.  Upon information and belief, the MLMC offering was not registered with any State agency.  Upon information and belief, the MLMC offering did not qualify for any exemption from registration.

60.     In sum, in order to fraudulently induce the Plaintiffs to invest in MLMC, Defendants made a series of misrepresentations and omissions of material fact, including but not limited to:

> a.      Providing false and misleading information, and omitting to provide information, regarding Plaintiffs' ability to invest as unaccredited investors in these unregistered securities;

b.  Providing false and misleading information, and omitting to provide information, regarding the application of a "friends and family" exception that would permit unaccredited investors, like Plaintiffs, to invest in these unregistered securities;

c.  Providing false and misleading information, and omitting to provide information, regarding the nature of Shisler's employment status and role in the company;

d.  Providing false and misleading information, and omitting to provide information, regarding MLMC's valuation;

e.  Providing false and misleading information, and omitting to provide information, regarding funding secured by MLMC, as well as MLMC's prospects for future funding;

f.  Providing false and misleading information, and omitting to provide information, regarding the need for additional funding;

g.  Providing false and misleading information, and omitting to provide information, regarding the reason why additional funding was needed;

h.  Providing false and misleading information, and omitting to provide information, regarding the state of MLMC's operations;

i.  Providing false and misleading information, and omitting to provide information, regarding MLMC's projected financials;

j.  Providing false and misleading information, and omitting to provide information, regarding MLMC share liquidity; and

k.  Providing false and misleading information, and omitting to provide information, regarding the prospects for a future MLMC buy-out.

**B.  Roche's Self-Dealing is Facilitated**

61.  Upon information and belief, despite selling shares of MLMC to Plaintiffs and supposedly as many as 75 other investors at a $10,000,000 valuation of the Company, Defendants had been negotiating a $3,000,000 term loan with Bohicket, as well as a stock purchase agreement with Roche at a different and more favorable valuation for Roche in June 2013.

62.  Beginning on or around January 2013, contrary to Dupuis, Woicik and Shisler's prior statements to Plaintiffs, MLMC was in desperate need for funding to keep itself afloat. Upon information and belief, Defendant Roche was fully aware of MLMC's urgent need for funding and lack of viable alternate investors.

63.     On or about May 2013, Roche agreed to provide $3 million of funding ("Bohicket 1") to MLMC. As part of the negotiated deal, Roche required that amendments be made to MLMC's Articles.

64.     MLMC accepted Roche's terms, and approached the shareholders regarding the circumstances of the funding deal that required investor approval.

65.     In early June 2013, Plaintiffs received a copy of MLMC's restated Articles of Incorporation ("Articles"), as well as a proxy document, which stated that the shareholder signatory agreed to authorize MLMC to enter into a financing agreement with Bohicket MLMC, LLC ("Bohicket"), as well as to approve the revised Articles.

66.     On June 3, 2013, Woicik also sent Patel a copy of the amended Articles and proxy document by email.  Woicik wrote to Patel that a "yes" vote would "enhance your rights" by "giving all the Common Shareholders the same rights the new investor is asking for."  Woicik further stated that a "no" vote "would jeopardize this funding."

67.     Defendants purposefully hid that the true reason for the change was to permit defendant Roche and others to self-deal, by permitting transactions between MLMC and third-party entities in which MLMC Directors or Officers had a financial interest.

68.     In a phone call between Farkas and Shisler in June 2013, Shisler advised Farkas to vote "yes" to the proxy.  Shisler stated that the price per share to new buyers after the funding deal closed would be significantly higher than the price paid by Plaintiffs for their shares.  Shisler made no mention of the changes to the Articles, or how those changes would affect Plaintiffs.

69.     Unaware of the meaning or significance of Article VI, and acting in direct reliance on Shisler's advice and representations, Plaintiffs and other investors voted in favor of the funding deal and amendment on June 6, 2013.

70.     The amended Article VI provision contractually permitted Defendant Roche—upon information and belief, the majority owner of Bohicket, who would later become an MLMC Board Member, and MLMC President—to remain an interested party on both sides of multiple funding deals in which Bohicket issued loans to MLMC under highly unfavorable terms.

71.     In a June 24, 2013 Shareholder Update Letter, Dupuis informed the shareholders that MLMC had secured a $3 million loan from Bohicket ("Bohicket 1").  Dupuis did not disclose the terms of this deal in this or any other communication.  In fact, MLMC's leadership deliberately withheld the terms of this deal from communications it sent to MLMC's shareholders so as to avoid answering difficult questions about it.

72.     In June 2013, Plaintiff Farkas communicated with Woicik requesting an update on the number of shares that have been sold as well as their valuation.  Farkas was informed that no shares of MLMC have been sold since Patel purchased his shares six months earlier.

### C. Defendants Continue to Misrepresent MLMC's Status and Growth Potential

73.     Over a period of approximately three years after the execution of the Bohicket 1 deal—despite repeated requests by Plaintiffs for information concerning the company, the dilution of their shares, and the status of the St. Louis plant—the Defendants provided Plaintiffs with virtually no meaningful information regarding the status of the company.   The only communications Plaintiffs received from Defendants during this time consisted of gross mischaracterizations, misstatements and omissions meant to continue to deceive and mislead Plaintiffs with respect to the state of MLMC's operations and finances, the need for more funding, the purpose of that funding, and the potential growth of the company.

74.     In June 24, 2013, Dupuis wrote that "With all development milestones completed, road blocks finally cleared and initial funding in place, the company is now positioned to scale."

75.     Six months later, in a January 22, 2014 letter to the Stockholders and Shareholders of MLMC, Dupuis made specific representations regarding L'hoist, the lime manufacturing company that had allegedly contracted with MLMC to purchase the fuel product to be produced at the St. Louis plant.  Dupuis claimed that "Lhoist's Executive Management has further confirmed that following the successful opening of the St. Louis project during 2014, it is their desire to deploy MLMCs process and fuel technology internationally… During the 3rd quarter 2013, MLMC Management proceeded with on the ground activities in Birmingham, Alabama/Atlanta, Georgia in order to get a head start on his second Lhoist project."

76.     In the same January 22, 2014 communication, Dupuis announced that MLMC's Board of Directors would be installed beginning in February 2014.  The Board would consist of five members:  Dupuis, Woicik, Roche, Phillips and Murphy.

77.     Plaintiffs sent a series of emails in late-January 2014 to ask questions regarding the St. Louis plant, the contractual relationship with L'Hoist, and the causes of the various delays in opening the St. Louis plant.

78.     In response, Defendant Dupuis largely ignored these questions, and further mischaracterized MLMC's valuation and stability, asserting in a January 29, 2014 email that "[i]f we build 3 to 5 full scale plants the company is worth 500 to 700 million.  No worries."

79.     In late May 2014, frustrated with the dearth of reliable information being communicated by the Company, its executives and the Board, Plaintiff Farkas inquired about selling his shares.  Farkas never received a written response to his email request, but in June 2014, Farkas received a call from Roche who stated that there was no market for the shares, but advised Farkas to be patient as they will be worth a lot more after the plant opens.

80.     Indeed, during this two year period from 2014 to 2015, the Defendants continued to mischaracterize the status of the St. Louis plant project, repeatedly insisting over a period of *years* that its opening was delayed due to "justified" causes, including "bad weather," while maintaining that the plant opening nevertheless remained imminent.  The plant's "grand opening" did not take place until January 2015—an event that was entirely ceremonial, as the "plant" consisted of stacked shipping crates and a few unconnected conveyor belts at that time, and was

nowhere near operational.  Upon information and belief, the plant never operated at anywhere close to full capacity.

81.     In a December 31, 2014 letter, Dupuis writes that "Both MLMC and Bohicket still project that each … Plant built, at capacity, will be worth $50 to $70 million dollars.  After the opening of the St. Louis Project, management will do everything in its power to secure inexpensive financing in a lending facility large enough to build 2 to 3 plants during 2016 and up to 5 plants per year going forward."

82.     The Defendants further repeatedly mischaracterized MLMC's need for additional funding, including the amount of funding required, the reason why funding was needed and the use the needed funds would be put to.  Communications with Plaintiffs and other shareholders from February 2014 to September 2015 stated the need for additional financing from Bohicket, and each was related to support the St. Louis project.

83.     The Defendants drafted, reviewed, and/or approved the communications made to shareholders containing these projections and other misrepresentations.  Each Defendant has ultimate authority over the statements contained in these communications.

84.     The Defendants knew, or should have known, that there was no reasonable basis to believe in the accuracy of the financial projections and other representations, and that MLMC was incapable of commercial operation.

### D.  **Unfavorable Bohicket Deals**

85.     Now with the ability to self-deal, and with the first Bohicket deal of $3 million fully executed, from 2014-2015, MLMC, with Roche as either a member of the Board of Directors or the executive team, executed seven additional loan deals with Bohicket.

86.     In a October 2, 2014 Stockholder Update Letter, MLMC announced that it had closed on a second Bohicket deal ("Bohicket 2"), consisting of a 3 year term loan for $3,500,000.  The letter further stated that MLMC was in the process of seeking a third loan from Bohicket, for $2 to 3 million dollars.  MLMC did not disclose the terms of Bohicket 2 in this or any other communication.  As with Bohicket 1, MLMC's leadership deliberately withheld the terms of Bohicket 2 from communications it sent to MLMC's shareholders so as to avoid answering difficult questions about it.

87.     The October 2, 2014 letter further previewed an upcoming Bohicket deal for $2-3 million ("Bohicket 3") which MLMC said was to "support the cash flow requirements of the St. Louis Projects as it ramps up to capacity during 2015."

88.     The October 2, 2014 letter also noted that the Board of Directors now consisted of the following 5 members—Dupuis, Woicik, Phillips, Roche, and a fifth seat: "it is anticipated this seat will be filled with one of the lenders participating in the Third Bohicket Loan" ("Bohicket 3").  The terms of the deal were not disclosed in this communication, or in any other communication sent from MLMC leadership to all shareholders.

89.     Dupuis's December 31, 2014 letter confirmed the execution of the Bohicket 3 deal, and further noted that another Bohicket deal ("Bohicket 4") was also in the works.

90.     In a September 10, 2015 letter from then-acting CEO Caravella, Caravella stated that:

> As far as the financial conditions of our company goes, we had to make a lot of difficult decisions. In 2014, three critical loans were made to the company by our lender Bohicket. Three more loans were made in 2015. All 6 loans contained high interest and equity rates since there was very little time to raise the money and difficulty finding any other entities to contribute. We were not a mature enough company at the time, which made it almost impossible to find new money. *The sixth loan, our most current one, is presently being financed (Bohicket 6) and hopefully will close within the next few weeks* (emphasis added). This money should bridge us to the point where we will be in a much better position to raise larger amounts of money at better rates by first quarter 2016.

None of the documents evidencing the specifics of these deals were ever shared with Plaintiffs.

### E.  Dupuis Abruptly Resigns and Roche Seizes Total Control, Further Diluting the Shares of the Original Investors

91.     Less than two months after Dupuis boldly asserted that MLMC would be worth "500 to 700 million" dollars after construction of 3 to 5 plants, Woicik announced in a March 10, 2015 email to shareholders that Dupuis had resigned, allegedly for "personal reasons." The email further provided that Dupuis would no longer play a role in the company's day-to-day operations and that Caravella would be serving as acting Chief Executive Officer.

92.     In a December 13, 2015 email, Colussy represented to Plaintiffs that Defendant Roche was "MLMC's President and major investor"—completing Roche's total takeover of MLMC.

93.     In a subsequent email from Dupuis to Farkas on December 17, 2015, Dupuis represented that "most of the issues surrounding my resignation and complete dismissal from all company activities is due to my insistence that the stockholders be informed. Since the board is a majority of Bohicket people they have no desire to involve anyone not…Bohicket."

94.     On January 13, 2016, Dupuis wrote the following in an email to all MLMC shareholders, confirming Roche's double-dealing and breach of fiduciary duty to Plaintiffs and all other shareholders:

> When asked about Bohicket 7 and the revised projections, I expressed that I ended my participation as a board member prior to the close of Bohicket 7 and resigned shortly their after (sic) due to my concerns about this transaction and other documents. I stated that I have no *direct* knowledge as to the current challenges or future financings…(emphasis in original).

95.     Because he controlled MLMC's Board of Directors and led MLMC's executive team, Roche was able to negotiate both sides of the various "bailout" deals with Bohicket that effectively diluted the Plaintiffs shares.  This was confirmed in a March 5, 2016 email by the then-deposed Mark Dupuis to the original shareholders:

> [O]ne of the reasons I resigned from MLMCs Board was because the chairman and [Roche] explained to me that the next transaction would be for approximately $8 million at a 75% dilution to the common stockholders … Further, in my opinion, *$8 million is not even close to what is needed to scale the company*, therefore, the *next transactions would surely leave the original stockholders with nothing anyway* (emphasis added).  While I appreciate the need to raise more money, it seems that it should not be at the expense of the original stockholders.  The high cost of equity/capital should now be on the shoulders of Bohicket, as Bohicket has had full control of everything for more than a year."

96.     Another original shareholder replied to the email chain on March 7, 2016.  He disclosed the fact that he requested to sell his stock 5 years earlier, when he was diagnosed with cancer: "I was told that I couldn't due to the new investor, and the agreement that was made between the owner [Dupuis] and the investor [Roche]"—further evidence of the deception and misrepresentation perpetuated by Dupuis, Woicik, and Shisler regarding the liquidity of Plaintiffs' shares.

97.     In an April 26, 2016 communication to all MLMC shareholders, Phillips accused Dupuis of mismanaging MLMC's finances, and ceding control of the company to Roche "as the only member of Bohicket and sole decision maker regarding all financial matters."  Phillips' email disclosed that "[a]ll financial decisions had to be approved by Bohicket with John Roche being the only member with a vote."

### F.   Bohicket and Roche Threaten to Shut Down MLMC

98.     On April 20, 2016, MLMC distributed a "MLMC Proposed Transaction & Company Update" advising MLMC shareholders that "[a]s a result of [MLMC's] default, Bohicket stands ready to accelerate the entire debt (approximately $18.8 million) and begin a foreclosure on all of MLMC's assets."

99.     The April 20, 2016 letter summarized the proposed transaction as follows:

a.     MLMC surrenders nearly all of its assets;

b.     Bohicket provides bridge financing ("Bohicket 8"); and

c.     "Existing MLMC shareholders who are Accredited Investors (as that term is used under state and federal law) receive warrants to acquire equity in the new company ("Newco") that will acquire the assets of…MLMC."

100.    The letter further provided: "Without the occurrence of the transaction contemplated above, MLMC will be unable to meet its obligations and will cease operations.  The result would be a foreclosure by Bohicket on the company's assets in which a public sale of assets

would take place in order to satisfy the Bohicket debt…it is unlikely that any proceeds would be realized for the stockholders…in this scenario."

101.    Upon information and belief, the April 20, 2016 letter was sent by Roche—an interested party on both sides of the proposed transaction.

102.    Plaintiffs received a memorandum and proxy document, requesting that they approve Bohicket's strict foreclosure, as proposed by the MLMC Board.

103.    Despite the overt threat to take away their shares if they don't vote in favor of the "Newco" deal, which would result in a complete loss of Plaintiffs' investments, Plaintiffs executed their "no" votes via the proxy documents on April 26, 2016 and April 27, 2016.

104.    Plaintiffs have not been informed of the outcome of the foreclosure vote and have received no communication from MLMC or any of the Defendants since April 2016.

105.    Plaintiffs only discovered the true facts concerning their investments, the fraud perpetuated by Dupuis, Woicik, Shisler and others that induced their investments, and the self-dealing by Roche during the first few months of 2016.  Prior to the time at which information began to flow as a result of the "Newco" deal, Defendants actively concealed the true facts from the Plaintiffs.

106.    Upon information and belief, Defendants Woicik, Roche, Phillips and Colussy have wrongfully allowed Defendant Dupuis to retain MLMC assets for his own personal use.  Upon information and belief, Dupuis is currently utilizing the property formerly used as an MLMC plant in Westfield, Massachusetts for a marijuana cultivation operation.

107.    Defendants Dupuis, Woicik, Roche, Phillips, and Colussy were or are officers, directors, and or managers of MLMC and are therefore control persons.  In their respective positions as control persons, these defendants directed and controlled, directly or indirectly, the management and actions of the defendant entity, and therefore they are personally liable, jointly and severally with and to the same extent as the other defendants.  In addition, the conduct by the individual Defendants described herein was done in their capacity as officers and directors on behalf of, and to the benefit of, MLMC.  MLMC accepted these benefits.

**<u>NO SAFE HARBOR</u>**

108.    The statements alleged to be false and misleading herein relate to then-existing facts and conditions, not forward looking statements.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

109.    In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statement pleaded herein, Defendants are liable for those false forward-looking statements because at the time those forward-looking statements were made, the speaker

had actual knowledge that the forward-looking statement was authorized or approved by an executive officer of MLMC who knew that the statement was false when made.

## FIRST CAUSE OF ACTION
### (Violation of § 10(b) of the Securities Exchange Act and Rule 10b-5 Promulgated Thereunder) Against Defendants MLMC, Dupuis and Woicik

110.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

111.    As set forth above, the Defendants (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or failed to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Plaintiffs in connection with their purchase of MLMC stock.

112.    Dupuis and Woicik were controlling persons who possessed the power to direct the management and policies of the MLMC business enterprise.

113.    The Defendants knowingly offered and sold unregistered securities that failed to qualify for exemption from registration because they exceeded the Regulation D investor limits; failed to provide investors with the requisite financial statements; and engaged in a plan to evade the registration requirements.

114.    Prior to Plaintiffs' purchase MLMC stock, the Defendants disseminated or approved the materially false and misleading statements described above, which they knew were misleading, or deliberately disregarded the fact that they were misleading.    These misrepresentations were made knowingly or recklessly and for the purpose of concealing MLMC's financial status and prospects from potential investors, in order to induce Plaintiffs to invest, and to sell stock to Plaintiffs at an inflated valuation.

115.    Defendants made materially false and misleading statements about MLMC's financial condition and operations to conceal adverse material information, as set forth above.

116.    Defendants made the materially false and misleading statements about MLMC with full knowledge that their statements were false in connection with Plaintiffs' purchases of MLMC securities.

117.    Plaintiffs were unaware of the materially false and misleading nature of the statements made by Defendants as described above.

118.    Plaintiffs justifiably relied, to their detriment, on those statements in investing in MLMC, and in retaining their shares of MLMC over time.

119.    As a direct and proximate result of the foregoing actions of the Defendants, Plaintiffs suffered damages in an amount to be determined at trial, but potentially exceeding the amount of each Plaintiff's investment.

## SECOND CAUSE OF ACTION
### (Violation of § 12(a) of the Securities Act)
### Against Defendants MLMC, Dupuis and Woicik

120.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

121.    Defendants knowingly sold MLMC securities to at least 3 unaccredited investors, Plaintiffs Farkas and Farkas, and Plaintiff Patel, in January 2013 and April 2013, respectively.

122.    Had Defendants intended to take advantage of an exception for the sale of securities to unaccredited investors, Defendants failed to make the appropriate financial disclosures required under 17 C.F.R. 230.502 to qualify for an exemption.

123.    Beginning in December 2012, Defendants made oral and written statements and delivered solicitation materials to Plaintiffs regarding the purchase and sale of MLMC securities in January 2013 and April 2013.

124.    Defendants' oral and written assertions and solicitation materials directed to Plaintiffs contained untrue statements of materials facts and/or omitted material facts, as described above.

125.    Defendants made materially false and misleading statements about MLMC's financial condition and operations to conceal adverse material information.

126.    Defendants made the materially false and misleading statements about MLMC with full knowledge that the statements were false and misleading, and that they had omitted material facts related to Plaintiffs' purchases of MLMC securities.

127.    Plaintiffs relied on Defendants' misrepresentations and omissions of material facts in their decisions to purchase MLMC securities in January 2013 and April 2013, and would not have retained their shares of MLMC stock but for those misrepresentations and omissions.

128.    Plaintiffs could not have discovered the falsity of Defendants' misrepresentations and omissions even with reasonable inquiry.  In fact, Plaintiffs made reasonably inquiries, but did not discover the falsity of Defendants' misrepresentations until early 2016.

129.    But for Defendants' misrepresentations and omissions of material fact regarding MLMC, Plaintiffs would not have purchased MLMC securities in January and April 2013.

130.    As a direct and proximate result of the foregoing actions of the Defendants, Plaintiffs suffered damages in an amount to be determined at trial, but potentially exceeding the amount of each Plaintiff's investment.

### THIRD CAUSE OF ACTION
### (Fraudulent Misrepresentation)
### Against Defendants MLMC, Bohicket, Dupuis, Woicik and Roche

131.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

132.    The Defendants made certain representations of material fact in connection with the offering of MLMC stock to Plaintiffs as alleged in detail herein.

133.    The Defendants also made certain representations of material fact regarding MLMC's financial status and future prospects as alleged in detail herein.

134.    On information and belief, the Defendants' representations concerned then existing material facts that were false, and the Defendants knew those representations were false when they made them.

135.    Alternatively, the Defendants' misrepresentations were recklessly made, as the Defendants knew that they had insufficient knowledge upon which to base such representations when the representations were made.

136.    The Defendants' false representations were made in order to induce Plaintiffs to purchase MLMC stock, and in order to induce Plaintiffs to retain their MLMC stock once purchased.

137.    In reasonable reliance on Defendants' false representations, Plaintiffs Farkas and Farkas, and Plaintiff Patel, each purchased $100,050 and $100,050 worth of MLMC stock, respectively, and were unable to later sell those shares.

138.    As a direct and proximate result of Defendants' false representations, Plaintiffs have been damaged in an amount to be proven at trial, but potentially exceeding the amount of each Plaintiff's investment.

### FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)
### Against Defendants MLMC, Dupuis, Woicik and Roche

139.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

140.    As alleged herein, Defendants provided information to Plaintiffs in the course of their business in order to induce Plaintiffs to purchase shares of MLMC stock, and in an effort to induce Plaintiffs not to sell their shares of MLMC stock.

141.    On information and belief, Defendants knew that the information they were supplying to Plaintiffs was false at the time the information was provided to Plaintiffs.

142.    Defendants failed to exercise reasonable care or competence in obtaining or communicating the information they supplied to Plaintiffs.

143.    Plaintiffs reasonably relied on the false information supplied by Defendants, and were unaware of the falsity of that information.

144.    In reliance on the false information supplied by Defendants, Plaintiffs purchased shares of MLMC stock, and decided not to attempt to sell those shares.

145.    As a direct and proximate result of the foregoing actions of the Defendants, Plaintiffs suffered damages in an amount to be determined at trial, but potentially exceeding the amount of each Plaintiff's investment.

### FIFTH CAUSE OF ACTION
### (Common Law Fraud Under New York Law)
### Against Defendants Dupuis, Woicik and Roche

146.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

147.    As fully set forth in paragraphs 30-59 above, Defendants Dupuis and Woicik made misrepresentations of fact in connection with the selling of shares in MLMC.

148.    As fully set forth in paragraphs 72-83 above, Defendants Dupuis and Woicik also made misrepresentations of fact regarding MLMC's financial status and future prospects.

149.    On information and belief, Defendants knew their representations were false when made.

150.    The false representations were made in order to induce Plaintiffs to invest in MLMC, and to induce Plaintiffs to retain their shares of MLMC once purchased.

151.    Plaintiffs were unaware of the falsity of the statements at the time they were made.

152.    In reasonable reliance on Defendants' false representations, Plaintiffs purchased shares of MLMC stock, and decided not to attempt to sell those shares.

153.    As a direct and proximate result of Defendants' false representations, Plaintiffs suffered damages in an amount to be proven at trial, but potentially exceeding the amount of each Plaintiff's investment.

### SIXTH CAUSE OF ACTION
### (Fraudulent Inducement and Rescission)
### Against Defendants Dupuis and Woicik

154.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

155.    The Defendants fraudulently induced Plaintiffs to purchase MLMC stock by making false representations, as set forth in paragraphs 30-59.

156.    The Defendants' representations, as alleged herein, were material and false.

157.    The Defendants knew the misrepresentations were false at the time they were made.

158.    The Defendants intended for the Plaintiffs, who were unaware of the falsity of Defendants' representations, to act upon those misrepresentations.

159.    Plaintiffs reasonably relied on Defendants' representations in purchasing MLMC stock.

160.    As a direct and proximate result of the foregoing actions of the Defendants, Plaintiffs suffered damages in an amount to be determined at trial, but potentially exceeding the amount of each Plaintiff's investment.

## SEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)
### Against Defendants Dupuis, Woicik, Roche, Phillips, and Colussy, as fully set forth below

161.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

162.    The Defendants owed Plaintiffs and all shareholders a duty of good faith and fair dealing.  This duty further existed as a consequence of the nature of Plaintiffs' investment and the relationship of the parties.

163.    Defendants Dupuis and Roche violated their duty by actively misrepresenting and fraudulently failing to convey facts material to Plaintiffs' decision to invest in MLMC, as set forth above in paragraphs 30-59.

164.    Defendants Dupuis, Woicik and Roche further violated their duty by actively misrepresenting and fraudulently failing to convey facts material to Plaintiffs' decision not to sell their MLMC shares, as set forth above in paragraphs 72-83.

165.    Defendant Roche further violated his duty by engaging in self-interested transactions that caused direct harm to MLMC and Plaintiffs.

166.    The Defendants had actual knowledge of the fraudulent and deceptive misrepresentations and omissions of material facts set forth herein.

167.    Such misrepresentations and/or omissions were made knowingly and for the purpose and effect of concealing the truth concerning the status of MLMC, including its financial condition and operations.

168.     The Defendants knew and recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the Plaintiffs, both as potential investors in MLMC and as MLMC shareholders.

169.     As a direct and proximate result of the foregoing actions of the Defendants, Plaintiffs suffered damages in an amount to be determined at trial, but potentially exceeding the amount of each Plaintiff's investment.

### EIGHTH CAUSE OF ACTION
#### (Unjust Enrichment)
#### Against MLMC, Bohicket, Dupuis, Woicik and Roche

170.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

171.     Plaintiffs conferred financial benefit upon the Defendants in the form of their purchase and retention of MLMC stock.

172.     The Defendants accepted those funds, which are fully traceable to Plaintiffs, and have retained them unlawfully and in bad faith.

173.     It would be inequitable to allow Defendants to retain the benefits conferred by Plaintiffs without payment of value in return to Plaintiffs.

174.     As a direct and proximate result of the foregoing actions of the Defendants, they have been unjustly enriched, and must be compelled to pay restitution and disgorge the amount of their unjust enrichment.

### NINTH CAUSE OF ACTION
#### (Money Had and Received)
#### Against MLMC, Bohicket, Dupuis, Woicik and Roche

175.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

176.     Plaintiffs conferred financial benefit upon the Defendants in the form of their purchase and retention of MLMC stock.

177.     The Defendants accepted those funds, which are fully traceable to Plaintiffs, and have retained them unlawfully and in bad faith.

178.     Upon information and belief, MLMC assets have been retained by Defendant Dupuis for his personal use.

179.     It would be inequitable to allow Defendants to retain the benefits conferred by Plaintiffs without payment of value in return to Plaintiffs.

180.    Defendants must be compelled to return Plaintiffs' funds.

## TENTH CAUSE OF ACTION
### (Civil Conspiracy)
### Against Defendants MLMC, Bohicket, Dupuis, Woicik, Roche, Phillips and Colussy

181.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

182.    Defendants knowingly joined and entered into a conspiracy and agreement designed to defraud Plaintiffs, by allowed Bohicket and its leadership to seize control of MLMC and wipe out Plaintiffs' investments by wrongfully foreclosing on its loans.

183.    The defendants committed the fraudulent acts and tortious conduct described in the preceding paragraphs for a common purpose pursuant to a common scheme, design, agreement, or understanding, express or implied.  One or more of the defendants committed overt acts in furtherance of that scheme, design, agreement or understanding.

184.    Pursuant to the conspiracy, Defendants further agreed to and did make false and misleading statements to Plaintiffs as alleged herein.

185.    Each of Defendants' tortious acts and false and misleading statements was an overt act undertaken in furtherance of Defendants' conspiracy to defraud Plaintiffs.

186.    Plaintiffs have been proximately damaged by the conspiracy and Defendants' actions in furtherance of the conspiracy, in an amount to be determined at trial, but potentially exceeding the amount of each Plaintiff's investment.

## ELEVENTH CAUSE OF ACTION
### (Common Law Fraud Under Massachusetts Law)
### Against Defendants MLMC, Dupuis, Woicik and Roche

187.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

188.    As fully set forth in paragraphs 30-59 above, Defendants made misrepresentations of fact in connection with the selling of shares in MLMC.

189.    As fully set forth in paragraphs 72-83 above, Defendants also made misrepresentations of fact regarding MLMC's financial status and future prospects.

190.    On information and belief, Defendants knew their representations were false when made.

191.    Defendants made the false representations in order to induce Plaintiffs to invest in MLMC, and to induce Plaintiffs to retain their shares of MLMC once purchased.

192.     Plaintiffs were unaware of the falsity of the statements at the time they were made.

193.     In reasonable reliance on Defendants' false representations, Plaintiffs purchased shares of MLMC stock, and decided not to attempt to sell those shares.

194.     As a direct and proximate result of Defendants' false representations, Plaintiffs suffered damages in an amount to be proven at trial, but potentially exceeding the amount of each Plaintiff's investment.

## TWELFTH CAUSE OF ACTION
### (Violation of Ch. 110A of the Massachusetts Securities Act
### Against Defendants MLMC, Dupuis, Woicik and Roche

195.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

196.     Defendants made materially false and misleading statements about MLMC's financial condition and operations to conceal adverse material information, as set forth above.

197.     Defendants made the materially false and misleading statements about MLMC with full knowledge of their misrepresentations and omissions of materials facts in connection with Plaintiffs' purchases of MLMC securities.

198.     The Defendants (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or failed to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Plaintiffs in connection with their purchase of MLMC stock.

199.     The Defendants offered and sold securities by means of fraudulent misrepresentations and intentional misstatements and/or omissions of material fact concerning the securities.

200.     Plaintiffs were unaware of the materially false and misleading nature of the statements made by Defendants as described above.

201.     Plaintiffs justifiably relied, to their detriment, on those statements in investing in MLMC, and in retaining their shares of MLMC over time.

202.     As a direct and proximate result of the foregoing actions of the Defendants, Plaintiffs suffered damages in an amount to be determined at trial, but potentially exceeding the amount of each Plaintiff's investment.

## THIRTEENTH CAUSE OF ACTION
### (Violation of Massachusetts Unfair and Deceptive Practices Act)
### Against Defendants MLMC, Bohicket, Dupuis, Woicik and Roche

203.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

204.    Defendants' acts and omissions, as complained of above, constitute unfair or deceptive acts or practices in violation of G.L. c. 93A, §§ 2 and 11.

205.    Upon information and belief, the unfair or deception acts or practices of Defendant occurred in substantial part in the Commonwealth of Massachusetts.

206.    Defendant knowingly or willfully committed the unfair or deceptive acts or practices.

207.    As a direct and proximate result of the foregoing actions of the Defendants, Plaintiffs suffered damages in an amount to be determined at trial, but potentially exceeding the amount of each Plaintiff's investment.

208.    Because Defendants have refused in bad faith, with knowledge or reason to know that their actions violated Chapter 93A, to offer Plaintiffs relief for the deceptive acts committed by Defendants, Plaintiffs are entitled to treble damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment, as follows:

A.  Awarding Plaintiffs damages in an amount to be proved at trial, together with interest;
B.  Awarding Plaintiffs treble damages under the Massachusetts Unfair and Deceptive Practices Act;
C.  Issuance of an Order rescinding the purchases Plaintiffs made, and placing Plaintiffs in the position they held with respect to each other immediately prior to Plaintiffs' purchase of MLMC stock, as described herein;
D.  Awarding Plaintiffs their costs and expenses incurred through this litigation, including reasonable attorneys' fees, experts' fees, and any other costs;
E.  Awarding Plaintiffs any other and further relief as warranted and just under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: September 20, 2016          Respectfully submitted,


                                   By: /s/ *Ryan P. Poscablo* _____

                                   Ryan P. Poscablo (NY 4086351)
                                   Edward Casmere (NY 4448866)
                                   Jacob L. Kahn (IL 6296867)*
                                   Patricia T. Mathy  (IL 6316515)*
                                   RILEY SAFER HOLMES & CANCILA LLP
                                   85 Broad Street
                                   18th Floor
                                   New York, NY 10007
                                   Tel. (212) 660-1030
                                   rposcablo@rshc-law.com
                                   ecasmere@rshc-law.com
                                   jkahn@rshc-law.com
                                   pmathy@rshc-law.com
                                   * to seek *pro hac vice* admission

                                   *Attorneys for Plaintiffs Benjamin Farkas, Julie
                                   Farkas, and Silpan Patel*